UNITED STATES OF AMERICA,
     Plaintiff,

v.                                   CASE NO. 6:24-cr-00287-CEM-RMN

RICHARD KOWALCZYK,
     Defendant.
_____/

## SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

Mr. Kowalczyk respectfully requests that this Court grant a downward variance based on Supreme Court precedent and the factors set forth under 18 U.S.C. § 3553, and impose a sentence of 120 months imprisonment.

## STATEMENT OF FACTS

On April 15, 2026, Mr. Kowalczyk entered a guilty plea to a single count of attempted coercion and enticement of a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b), pursuant to his written plea agreement with the government. *See* Docs. 100, 103. Mr. Kowalczyk's sentencing hearing is set for July 31, 2026. Doc. 122. Based on an offense level of 33 and a criminal history category of I, the advisory guidelines imprisonment range for Mr. Kowalczyk is 135 months to 168 months. *See* Doc. 129 (PSR) at ¶ 65.

## MEMORANDUM OF LAW

### *Introduction*

The dilemma of Mr. Kowalczyk's sentencing is how to achieve a just

resolution in a case that involves both egregious conduct and substantial mitigation. Consequently, Mr. Kowalczyk's case presents "a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 38, 53 (2007) (citing *Koon v. United States*, 518 U.S. 81, 113 (1996)). The Indictment and PSR cast Mr. Kowalczyk as a villain deserving of retribution. The sentencing guidelines follow with a rigid matrix that only considers Mr. Kowalczyk's criminal conduct in calling for an incredibly severe sentence.

Nevertheless, Supreme Court precedent, in contrast to the guidelines, demands more than sentences that only consider the defendant's crime. Indeed, "[t]here is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her "as an individual."" *Concepcion v. United States,* 597 U.S. 481, 486 (2022) (citation omitted). A court must consider a wide breadth of information to ensure that the punishment will suit not merely the offense since "a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Pepper v. United States*, 562 U.S. 476 (2011).

Consistent with this obligation, 18 U.S.C. § 3553(a) requires a court to contemplate a broad range of information in determining a defendant's sentence rather than limiting its consideration to the advisory sentencing guidelines. Thus, a court must consider seven statutory factors under § 3353(a), with the guidelines

just being one of the seven factors. *See* 18 U.S.C. § 3553(a)(1)-(7).[1]

The following chapters analyze the § 3553 factors in Mr. Kowalczyk's case. Such an analysis indicates that these sentencing factors support his request for a variance. While Mr. Kowalczyk's conduct was serious and wrong, there are significant mitigating factors in his case. Thus, this memorandum concludes that the imposition of a guideline sentence in Mr. Kowalczyk's case violates a court's duty to impose a sentence that is sufficient but not greater than to satisfy the purposes of § 3553(a). *See Pepper*, 562 U.S. at 476.

## Chapter 1
## Nature of the Offense and the History of the Defendant

In linking a defendant's criminal conduct with his personal history and characteristics, the first section 3553(a) factor comprehends that a defendant's criminal conduct should not be considered in isolation or even as the paramount sentencing factor. *See, e.g., United States v. Adelson*, 441 F. Supp. 2d 506 (S.D.N.Y. 2006) (Rakoff, J.). In this way, the first factor recognizes that every case contains a narrative of "human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall,* 552 U.S. at 53.

*Offense Conduct*

Mr. Kowalczyk recognizes the seriousness of his offense. He also

---

[1] The most explicit statutory recognition of this principle states that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." *See* 18 U.S.C. § 3577.

acknowledges that his current offense constitutes a sad denouement to the life he had lived and the career he has lost. Nevertheless, there are certain mitigating factors concerning Mr. Kowalczyk's crime.

First, although Mr. Kowalczyk discussed meeting with the 15-year-old male, he never actually had any personal encounter with the individual. Mr. Kowalczyk's conduct with the minor was limited to internet communications. He did not take substantial steps towards meeting the minor such as booking a hotel, setting up transportation, or sending funds. Further, while the government's long and extensive investigation demonstrated that Mr. Kowalczyk and Mr. Patrick discussed sex with a minor, the government could not produce any evidence that such conduct ever occurred. In fact, the government has acknowledged that Mr. Kowalczyk and his co-defendant never met the minor victim in person at any point during the offense conduct. Doc. 100 at 20, n. 2.

Second, although the severe production guidelines under U.S.S.G. §2G2.1 which increase the guideline level, have been applied to Mr. Kowalczyk, the minor victim had a profane chat username of "F_CK", initially used the profile picture of an adult male known to the Defendants, subsequently stated he was 16 years old, and bragged about engaging in sexual activity with a 40-year-old as well has having sex with an adult male in the back of a truck. As noted, despite the minor victim's expressed desire to engage in sexual activity with adults, Mr. Kowalczyk and Mr. Patrick did not take any steps to meet the minor victim or engage in physical contact with him. In the end, Mr. Kowalczyk's conduct was serious but was limited

to internet communications. While this conduct was reprehensible, it does not rise to the level of the typical enticement crime in which the defendant travels, sometimes even long distances, to a location to meet with a minor.

Third, despite the government's claims that Mr. Kowalczyk poses an unabating danger to children in the community, the facts of the case undercut the government's argument. Here, the government exhaustively searched Mr. Kowalczyk's electronic devices, which contained years of communications. However, the government has not produced any evidence of the defendant engaging in illegal or inappropriate chats with additional minors. Thus, this is not a case where Mr. Kowalczyk had extensive communications with numerous minors over the course of years.

Fourth, the chronology of this case belies the government's claimed concerns about the danger posed by Mr. Kowalczyk. The investigation began on February 8, 2023, when Mr. Kowalczyk fully cooperated with law enforcement at the Orlando International Airport. Specifically, agents seized his iPhone and he agreed to be interviewed by agents. Later, he agreed to drive with an agent to an off-site Homeland Security Investigations ("HSI") office in Orlando, Florida, where his interview continued. Mr. Kowalczyk continued to cooperate with law enforcement despite the fact that his attorney arrived at the airport and accompanied him to the HSI office. As a result of Mr. Kowalczyk's cooperation, agents were able to obtain the pin code to the seized iPhone, which they used to open and search the device. At the conclusion of the interview, Mr. Kowalczyk

advised the agents that he would continue to cooperate with law enforcement.  On February 16, 2023, law enforcement executed a search warrant at Mr. Kowalczyk's home where agents recovered multiple additional electronic devices.  By April of 2023, HSI agents had forensically examined Mr. Kowalczyk's iPhone and some other devices, they had located most, if not all, of the chats with the minor victim, and they had identified and contacted the minor victim. Thus, the bulk of the investigation was completed by April of 2023.  However, the government did not file an indictment against Mr. Kowalczyk and Mr. Patrick until December 4, 2024. *See* Doc. 2.  For their part, Mr. Kowalczyk and Mr. Patrick did not flee, tamper with evidence, or commit any additional offenses during the pre-indictment, investigative phase of the case, despite knowing about the government's investigation since February of 2023. Instead, Mr. Kowalczyk retained the undersigned counsel Scheller, with whom he maintained contact, and awaited notification as to the outcome of the government's investigation. That notification came during the 2024 holiday season when HSI agents contacted Mr. Kowalczyk between Christmas and New Year's and informed him that a warrant had been issued for his arrest, and that he needed to make arrangements to turn himself in. Mr. Kowalczyk immediately contacted undersigned counsel and made appropriate arrangements to voluntarily surrender on January 2, 2025. Docs. 20, 34.  Mr. Kowalczyk's law abiding conduct during the investigative phase of the case undercuts any suggestion that he presents an unrelenting danger to the public.

Additionally, the one year and eight-month delay between law enforcement

becoming aware of Mr. Kowalczyk's offenses and his indictment undermines the government's arguments. During this period, Mr. Patrick started teaching at a local school. Had the defendants posed the grave danger that the government now claims they do, they would have almost certainly been arrested and indicted much sooner. In sum, Mr. Kowalczyk's offense is serious, however, the mandatory minimum would be sufficient but not greater than necessary to address the nature of his crimes.

*History and Characteristics*

Despite the seriousness of his conduct, his crime cannot be the sole measure of his punishment. A contrary posture is antagonistic to Supreme Court precedent and § 3553 as it returns a defendant to a mandatory guideline regime in which prison sentences were dictated in advance.

Mr. Kowalczyk's crime should not be the sole determinative of his fate. Indeed, the letters of support establish that Mr. Kowalczyk has demonstrated exemplary qualities throughout his life including generosity, kindness and dedication. *See Letters of Support*, attached hereto as Exhibit 1 (Ex. 1). Notably, he has demonstrated these redeeming qualities throughout his life. *See id.*, *Letter of Kathleen Kowalczyk*.

Holly Kowalczyk, the Defendant's sister, states "[t]he brother I have known my entire life has always shown kindness, compassion, and love toward the people around him." *Id.*; *Letter of Holly Kowalczyk*. She further notes that Mr. Kowalczyk has financially supported their mother since their father's death ten years ago. *Id.*

*See also id.*; *Letter of Denise Poel* ("He had put everything on hold to take care of his Mom, Kathy, who was very ill"). Concerning his dedication to his mother, his aunt writes:

> He cares so much for his mom that he was with her every day never leaving her side. He supports his mom financially and emotionally and always sees to it that she is keeping up with her Drs. Appointments. When his mom lived in Florida he would offer to get flights to bring me to spend time with her.

*Id.*; *Letter of Pamela Ashley*

Mr. Kowalczyk's dedication to his mother extends to his entire family. His nephew, Donavan Richardson, states:

> My uncle has been much more than just a "uncle" to me and my siblings. I had no father in my life so uncle Ricky stepped in that male role model, and provider if needed. He taught me respect, a work ethic, leadership, and overall just who I am today.
>
> If it wasn't for him I'd be in jail or dead right now, he pulled me out of the inner city and bad decisions I was making as a child. He's someone who I can depend on no matter what it is. He led by example everyday for me and my brother.

*Id.*, *Letter of Donavan Richardson. See also id.*, *Letter of Brad Wiekman* ("Ricky loves and provides for those around him and is a role model for my friend Donavan. He is Donavan's father figure and has helped Donavan grow into the outstanding human being he is today").

Mr. Kowalczyk's kindness and generosity extends far beyond his family. Jennifer Joyce captures this tenant in writing:

> Rick is one of the most generous people I have ever known. Without looking for recognition or expecting anything in return, he gives his time and attention, asking questions and actively listening to what

people say. He gives his energy and care, seeking ways he can help someone in need.

*Id.*; *Letter of Jennifer Joyce*. Similarly, the Defendant's employee states: "Mr. Kowalczyk was always kind and caring while showing compassion to everyone he met. He gave people that were in need jobs even if the job wasn't necessary, he did this to give the person a feeling of worth and to help give them some financial stability." *Id.*, *Letter of Joel Gran*.

Ms. Adrienne Bailey describes how the Defendant supported her mother during challenging medical situations. *See id.*, *Letter of Adrienne Bailey*. She noted that his concern for her mother has continued even while he has been incarcerated. *Id.* ("Rick is one of the most thoughtful people I know"). *See also id,* *Letter of Denise Poel* ("He's a very generous person and also very successful; he has helped many people"); *Letter of ChouChou Guilder* (describing the Defendant as an outstanding boss and friend and supporting and building back the community after the Pulse massacre).

The quality and extent of Mr. Kowalczyk's compassion and generosity was demonstrated after the Pulse massacre. Kate Maini writes:

> One example that I can speak personally about occurred after the Pulse Nightclub shooting in Orlando. I was an employee there for 12 years. While our community was grieving, Rick, without thinking twice, stepped up and took action immediately. He opened his doors to Pulse employees who had nowhere else to go, providing us with jobs, safety, and stability during an incredibly painful time. He worked tirelessly organizing fundraisers which raised THOUSANDS of dollars to support members of the community affected by that tragedy, making sure every penny went to those in need of support. He never sought recognition for these efforts. He simply saw people in need and

did everything he could to help.

*Id., Letter of Kate Maini.*

Finally, the Letters of Support demonstrate that Mr. Kowalczyk is a devoted father to his young daughter. Reports from the Florida Department of Children and Families, which are attached to the PSR, confirm this fact. These reports show that Mr. Kowalczyk and Mr. Patrick's daughter was well-cared for by the defendants, and that a child welfare investigation determined "no danger threat identified." In sum, Mr. Kowalczyk and Mr. Patrick are doting and loving parents to their young child.

Against this backdrop, this section demonstrates that a sole focus on a defendant's criminal conduct, a vestige of the mandatory guideline regime, is inconsistent with a just result in Mr. Kowalczyk's case. Considering only a defendant's criminal conduct in determining his sentence is antagonistic to the tenet that a sentencing Court must consider a wide breadth of information and the factors that sometimes mitigate the crime and punishment to ensue. In the end, moving from a focus on the guidelines' sole consideration of Mr. Kowalczyk's criminal history and conduct in favor of his complete story provides a just sentencing examination. If *Concepcion* and *Gall* have any force, the Defendant who committed crimes may be subject to condemnation, but the Defendant as he appears today is worthy of this Court's mercy.

## Chapter 2
## Just Punishment

*All in all, punishment hardens and renders people more insensible; it concentrates; it increases the feeling of estrangement; it strengthens the power of resistance.*

Friedrich Nietzsche, *The Genealogy of Morals*, essay 2, aph. 14 (1887)

The PSR's conception of the guidelines results in an imprisonment range of approximately 11 to 14 years. This is a harsh and unfair punishment. Even the requested sentence of 10-years does not change the calculus. Indeed, it equates to 3,650 days in prison. And it is a punishment, based on a rigid matrix, that merely considers the quantity of time to be served without regard to the harsh punishment that Mr. Kowalczyk has already received and will receive based on his conviction.

As a result of his crime, Mr. Kowalczyk will lose at least the next 10 years with his infant daughter. He has lost the businesses he has built. And without income will inevitably lose his home. As a well-known member of the community, he has been publicly shamed and castigated due to media coverage of his case. *See, e.g.,* News 6, *'Sexual deviant:' Orlando nightclub owner enters plea deal in child sex crimes case*, WESH (April 16, 2026), available at https://www.clickorlando.com/news/local/2026/04/17/sexual-deviant-orlando-nightclub-owner-enters-plea-deal-in-child-sex-crimes-case/. Additionally, since their arraignment, Mr. Kowalczyk and Mr. Patrick have been subjected to public ridicule and death threats on social media forums. Specifically, several vitriolic and disturbing threats were posted by members of the community on a Facebook

page that listed an online article about the arrests of Mr. Kowalczyk and Mr. Patrick.  A composite of these posts are attached hereto as Exhibit 2. As the Court can see, these posts include death threats as well as the publication of the phone number belonging to Mr. Kowalczyk. In addition, the posts publicized photographs of the defendants, along with the physical address for their home.

A consideration of the punishment that Mr. Kowalczyk has already received does not account for the harshness of the future retribution he will endure. Mr. Kowalczyk will be subject to substantial punishment for the offense beyond his days in a prison cell. *See* Hugh LaFollette, *Collateral Consequences of Punishment: Civil Penalties Accompanying a Formal Punishment*, 22 J. of Applied Phil., 241, 244-46 (2005) (discussing and critiquing on proportionality grounds retributivist justification of collateral consequences).

Prior to the instant offense, Mr. Kowalczyk had no felony record. Nevertheless, based on his felony conviction, Mr. Kowalczyk will face an overwhelming number of collateral consequences. A congressional report authored by the United States Government Accountability Office (GAO) demonstrates that there are 641 collateral consequences of a felony conviction. *See* GAO Report 17-691, NONVIOLENT DRUG CONVICTIONS, *Stakeholders Views on Potential, Actions to Address Collateral Consequences*, (Sept. 2017), summary excerpt attached hereto as Exhibit 3. Of these 641 collateral consequences, 497 (78%) of them may last a lifetime. *See id.*

Recognizing the effect of collateral consequences of a felony conviction,

federal judges should account for such an impact at sentencing. *See United States v. Nesbeth*, Case No. 1:15-cr-00018, 2016 WL 3022073, at *1 (E.D.N.Y May 24, 2016) (Block, J.) (varying downward from guideline range of 33 to 44 months imprisonment to one-year of probation for a drug defendant based in part on the number of statutory and regulatory consequences he faced as a convicted felon). The *Nesbeth* Court concluded that "sufficient attention has not been paid at sentencing . . . to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence." *Id.* In granting a variance in *Nesbeth*, the court asserted that the collateral effects of a criminal conviction can be "devastating" to a defendant. *Nesbeth*, 2016 WL 3022073, at *1. As Judge Block concluded, "[t]oday, the collateral consequences of criminal convictions form a new civil death." *Id.* at *3.

One of the most significant collateral consequences for Mr. Kowalczyk will be his lifelong registration as a sex offender. The enduring stigma of sex offender registration constitutes a significant punishment. *United States v. Autery,* 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of possession of child pornography, court's *sua sponte* variance to probation not unreasonable in part because of onerous conditions of probation including registration for life as sex offender, prohibitions on location and affiliations, and restrictions on use of computer).

In addition to his sex offender registration, such a status will have a significant impact on his future employment prospects and his relationships. *See*

Economist, *Unjust and Ineffective* (August 6, 2009). Mr. Kowalczyk's stigma as a sex offender is a significant punishment that will impact all aspects of his future existence. Such a result supports a variance in Mr. Kowalczyk's case. *See, e.g., United States v. Wachowiak*, 412 F. Supp. 2d 958, 963-964 (E.D. Wis. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007) (granting variance based in part on the recognition that "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction).

### *Chapter 3*
### *Deterrence*

*"No punishment has ever possessed enough power of deterrence to prevent the commission of crimes."*

Hannah Arendt, *Eichmann in Jerusalem*, Epilogue (1963).

The preceding discussion established that a lengthy prison sentence is inconsistent with a just sentence. In turn, this section addresses the question of whether a long prison sentence will accomplish the § 3553 factor of deterrence. Such an analysis requires an analysis of both general and specific deterrence.

*General Deterrence*

The belief that lengthy prison sentences are effective in deterring crime is the last refuge for the misled. Indeed, it is a false narrative that is not supported by

empirical study or evidence.[2] *See* Gary Kleck and J.C. Barnes, *Deterrence and Macro-Level Perceptions of Punishment Risks: Is There a "Collective Wisdom"?*, 59 Crime & Delinquency 1006, 1031-33 (2013) (concluding that "increases in punishment levels do not routinely reduce crime through general deterrence mechanisms, because the fundamental link between punishment levels and perceptions of punishment levels appears to be weak to nonexistent").

Nevertheless, federal prosecutors consistently argue this factor in support of harsh sentences. And why wouldn't they? If you consistently assert that prison sentences are necessary to prevent future crimes, then minimum mandatories and harsh guideline sentences are entirely rationale. But the troubling aspect of the premise is not only found in its invalidity, but also in its effectuation of mass incarceration. *See* Dr. Oliver Roeder et al., *What Caused the Crime Decline?*, Brennan Center for Just., 22-23 (Feb. 12, 2015). To be sure, there is no correlation between punishment and reductions in crime. *See id.* For the Government to argue otherwise is expected but hypocritical, nonetheless. Indeed, the Department of Justice (DOJ) has concluded that incarcerating defendants is not an effective means of deterrence. *See* U.S. Dept. of Justice, Nat'l Inst. of Justice, *Five Things About Deterrence* (July 2014), attached hereto as Exhibit 4. The DOJ has further

---

[2] Limited narratives have a profound and negative impact on decision-making. *See, e.g.*, Dolan & Henwood, *Five Steps Toward Avoiding Traps in Narrative Decision-Making*, Nat'l Inst. of Health (Aug. 12, 2021); *see also* Akira Kurosawa, *Rashomon* (Daiei Films release on Dec. 26, 1951, in the U.S.). But born out of fear, such narratives satisfy the human desire for certainty. *See, e.g.*, Maria Konnikova, *Why We Need Answers*, The New Yorker (Apr. 30, 2013).

concluded that even increasing the severity of punishment does little to deter crime.

*Specific Deterrence*

The likelihood that the defendant "will engage in future criminal conduct [is] a central factor that district courts must assess when imposing sentence." *Pepper,* 562 U.S. at 492. Having established that prison sentences, regardless of length, have no impact on general deterrence, this section demonstrates that the factor of specific deterrence also supports Mr. Kowalczyk's request for a variance. The first part of this section focuses on studies establishing that incarceration has no effect on recidivism. The second part asserts that Mr. Kowalczyk's history and characteristics prove that he will never commit another crime.

a. *The relationship between incarceration and recidivism*

As in the case of general deterrence, empirical evidence does not establish a relationship between sentence length and specific deterrence, regardless of the type of crime. *See* National Institute of Corrections*, Myths and Facts, Why Incarceration is Not the Best Way to Keep Communities Safe* (2016), attached hereto as Exhibit 5. To be sure, the best available evidence establishes that imprisonment does not reduce recidivism more than non-custodial sanctions. Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). There is strong evidence that prison - by disrupting education and employment, reducing prospects for future employment, weakening family ties and exposing less serious offenders to older

more serious offenders - leads to increased recidivism. *See Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Public Policy 589 (2007). *see also* Friedrich Nietzsche, *The Genealogy of Morals*, essay 2, aph. 14 (1887) ("All in all, punishment hardens and renders people more insensible; it concentrates; it increases the feeling of estrangement; it strengthens the power of resistance").

Thus, the most effective way to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since "incarceration does little to change a person's behavior" and persons sentenced to prison have higher recidivism rates than those sentenced to community corrections.  Ex. 5 at 1, 4.

b. *Mr. Kowalczyk's lower risk of recidivism*

Mr. Kowalczyk is 46 years old and has a criminal history category of I. Moreover, he is college educated, has been employed throughout his life, and is married. Because of these factors, Mr. Kowalczyk poses a lower risk of recidivism. *See* U.S. Sent. Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 12-13 (May 2004). Moreover, Mr. Kowalczyk's life-long sex offender registration, as well as the conditions of supervised release for such offenders, will further reduce his low risk of recidivism.

In imposing the least sufficient sentence to account for the need to protect the public from further crimes of Mr. Kowalczyk, this Court should consider the

statistically low risk of recidivism presented by him. *United States v. Urbina*, slip op., 2009 WL 565485, *2-3 (E.D. Wis. Mar. 5, 2009) (considering low risk of recidivism indicated by defendant's lack of criminal record, positive work history, and strong family ties). Additionally, he will be well into his fifties upon his release from prison. This further decreases his risk of recidivism. *See Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) (basing variance in part on defendant's age of 50 upon release because recidivism drops substantially with age); U.S. Sentencing Comm'n, *Effects of Aging on Recidivism Among Federal Offenders*, Dec. 2017, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited on July 26, 2026).

Mr. Kowalczyk has also fully complied with stringent pretrial release conditions since his initial appearance on January 2, 2025, including home detention and location monitoring. *See* Docs. 20, 23. For well over a year, Mr. Kowalczyk even lived apart from his husband, Mr. Patrick, and their infant daughter. Although he was allowed to visit his family during certain hours, it was not until Mr. Patrick was remanded that Mr. Kowalczyk was allowed to resume living in his home with his child. Doc. 95. As a result, Mr. Kowalczyk missed many milestones in the life of his young daughter. Nonetheless, his full compliance with pretrial release conditions provides further proof to this Court that he does not pose the grave danger to the community that the government suggests.

Further still, as set forth in the PSR, after evaluating Mr. Kowalczyk, Dr. Jeffrey A. Danziger ("Dr. Danziger"), a qualified psychiatrist, determined that Mr. Kowalczyk does not suffer from any psychosexual disorder or sexual paraphilia as defined in the DSM-5-TR that would adversely impact his judgment, reasoning, or impulse control, or which would likely render him a heightened risk of harm or danger to himself, to children, or to the community at large. Thus, with the proper treatment, which Mr. Kowalczyk will be mandated to receive as a sex offender, his risk of reoffending upon release remains relatively low.

## Chapter 4
## Educational, Medical Care, or Other Correctional treatment

Judges carry the heavy burden of depriving individuals of their liberty. But the Bureau of Prisons shoulders the constitutional burden of protecting the remaining rights of the incarcerated while in custody.

*United States v. Bardell*, 634 F.Supp.3rd 1083, 1084 (M.D. Fla. 2022).

Recognizing the seriousness of his transgression and his alcoholism, Mr. Kowalczyk requests sex and drug offender treatment. The requested sentence of 10-years will provide him with sufficient time to complete these programs.

## Chapter 5
## Disparity

Section 3553(a)(6) forbids not all sentencing disparities but only "unwarranted" ones "among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A sentence of 120 months for Mr. Kowalczyk would not create unwarranted disparity. Attached hereto as

Exhibit 6, is a chart demonstrating several other online enticement cases where defendants in the Middle District of Florida received sentences of 120 months imprisonment. Some of these cases involved defendants who did not accept responsibility, and, instead, proceeded to trial. Additionally, in contrast to Mr. Kowalczyk, some of the defendants in these other cases made substantial steps to meet individuals they believed to be minor children for the purposes of engaging in sexual activity. Lastly, Judiciary Sentencing Information ("JSIN") statistics compiled by the Sentencing Commission for similarly situated defendants demonstrates that over the last five fiscal years those offenders whose primary guideline section, offense level, and criminal history category were the same as Mr. Kowalczyk, received an average sentence of 129 months imprisonment and approximately half of all such defendants received some form of downward variance. *See* U.S. Sent'g Comm'n, *Judiciary Sentencing Information* (available at https://jsin.ussc.gov/analytics/saw.dll?Dashboard) (selecting primary guideline U.S.S.G. § 2G2.1 criminal-history category I, and total offense level 33) (results attached hereto as Exhibit 7). Other courts have relied on data from JSIN in determining the appropriateness of a sentence. *See e.g. United States v. McDaniel*, 59 F.4th 975, 979 (8th Cir. 2023); *United States v. Arias*, Case No. 3:11-cr-00494-HZ-1, 2023 U.S. Dist. LEXIS 54891, at *6 (D. Or. Mar. 28, 2023); *United States v. Lampkin*, Case No. 3:15-cr-00005-SLG, 2023 U.S. Dist. LEXIS 140971, at *4 (D. Alaksa Aug. 11, 2023).

> *If you take a matrix to factor offense severity, overlay it with mandates born of popular outrage, and tailor it purportedly to address almost every eventuality, you get "justice" dictated in advance, marked by visceral condemnation, and based on the pretense of omniscience.*

*United States v. Williams*, 372 F.Supp.2d 1335, 1337-1338 (M.D. Fla. 2005) (Presnell, J.).[3]

The guidelines recommend an imprisonment sentence of over approximately 5,000 days. This recommendation is owed little deference.[4] Indeed, the guideline recommendation is draconian and absurd. Promulgated to provide sentencing consistency, the sentencing guidelines have achieved its goal through the consistent imposition of sentences that have been both irrational and unjustly harsh.

The guidelines pose a particular risk for Mr. Kowalczyk since their rigid matrix does not account for the unique circumstances of his case. Indeed, a mechanical application of the guidelines, which solely rely on his offense conduct as reflected in a rigid sentencing matrix, does not account for the unique factors

---

[3] Although *Williams* was reversed by the Eleventh Circuit in *United States v. Williams*, 456 F.3d 1353 (11th Cir. 2006), the Eleventh Circuit's decision was overruled by the United States Supreme Court. *See Kimbrough v. United States*, 552 U.S. 1353 (2007). =
[4] As recognized in *Gall*, district courts "may not presume that the Guidelines range is reasonable." 552 U.S. at 49. *See also Rita v. United States*, 551 U.S. 338, 351 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

that mitigate Mr. Kowalczyk's sentence – a result that is antagonistic to § 3553(a), as well as *Koon*. In placing offense conduct above all else, the guidelines do not account for Mr. Kowalczyk's exemplary characteristics. *See* Chapter 1, *supra*. They do not account for the cruel and unusual punishment he has received and will receive for his crime. *See* Chapter 2, *supra*. They do not account for the significant impact of the collateral consequences of his conviction. *Id.* They do not account for Mr. Kowalczyk's low risk of recidivism. *See* Chapter 3, *supra*. They do not account for the greater severity of his punishment in the BOP due to the nature of his child exploitation conviction. They do not account for the unjust disparity between this case and other cases in this district involving defendants who engaged in more serious conduct. *See* Ch. 5, supra.

The inability of the guidelines to meet the requirements of § 3553 constitutes a grave failure in a case involving an offender like Mr. Kowalczyk. To be sure, a mechanical application of the guidelines in his case is necessarily inconsistent with a just sentencing process as contemplated by Supreme Court precedent and the § 3553(a) factors. Such a technical approach would only prove that injustice not always occurs through the impact of cataclysmic judicial decisions but often flows from the tide of quiet bureaucratic choices made without foresight or

contemplation.[5]

**<u>CONCLUSION</u>**

Based on the foregoing arguments, Mr. Kowalczyk requests a downward variance in his sentence.

Respectfully submitted,

*/s/ Fritz Scheller*
Fritz Scheller
Florida Bar No. 0183113

*/s/ Andrew C. Searle*
Andrew C. Searle
Florida Bar Number 0116461

---

[5] The greatest evil is not now done in those sordid 'dens of crime' that Dickens loved to paint. It is not done even in concentration camps and labor camps. In those we see its final result. But it is conceived and ordered (moved, seconded, carried, and minuted) in clean, carpeted, warmed, and well-lighted offices, by quiet men with white collars and cut fingernails and smooth-shaven cheeks who do not need to raise their voice.   C.S. Lewis, The Screwtape Letters at xxxvii (1961 ed.).

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all parties this 27th day of July 2026.

/s/ *Fritz Scheller*
Fritz Scheller
Florida Bar No. 0183113
Fritz Scheller, P.L.
231 E. Colonial Drive
Orlando, Florida 32801
PH:    (407) 792-1285
FAX:  (407) 649-1657
Email: fscheller@flusalaw.com

/s/ *Andrew C. Searle*
Andrew C. Searle
Florida Bar Number 0116461
Searle Law P.A.
231 E. Colonial Drive
Orlando, Florida 32801
Telephone: 407-952-0642
Email: andrew@searle-law.com